a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RONALD EARL WILLIAMS, Petitioner | CIVIL ACTION NO. 5:18-CV-1139-P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| WARDEN, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) filed by *pro se* Petitioner Ronald Earl Williams (#403681) ("Williams"). Williams is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Williams challenges his conviction in the First Judicial District Court, Caddo Parish.

Because the § 2254 Petition is both untimely and substantively meritless, Williams's § 2254 Petition (Doc. 1) should be DENIED and DISMISSED WITH PREJUDICE.

I.  Background

Williams was convicted of armed robbery with the use of a firearm in two separate cases—Docket Nos. 205,611 and 205,771 in Caddo Parish, Louisiana. Williams was adjudicated a second felony offender. State v. Williams, 34,369 (La. App. 2 Cir. 2/28/01), 781 So.2d 673; State v. Williams, 34,370 (La. App. 2 Cir. 2/28/01), 781 So.2d 682. Although the cases were tried on the merits separately, the habitual offender adjudications and sentencings were combined. Id. Williams's conviction and

sentence were affirmed on appeal, and Williams did not seek further review in the Louisiana Supreme Court.

Williams previously filed a § 2254 petition challenging the conviction and sentence in Docket No. 205,771. (Docket No. 5:15-cv-272). The application was denied as untimely and on its merits. (Docket No. 5:15-cv-272; Doc. 22). Williams's motion for certificate of appealability was denied by the United States Court of Appeals for the Fifth Circuit. (Docket No. 18-30384, 5th Cir., 11/2/18).

Williams filed several applications for post-conviction relief in his criminal cases. (Doc. 14-4, pp. 2-8, 227-28;Doc. 14-5, pp. 94-102, 112-126, 192-95, 229-37; Doc. 14-6, pp. 122-26; Doc. 14-8, pp. 93-102; Doc. 14-9, pp. 130-37). Williams alleges that he filed an application for post-conviction relief in May 2015, claiming that, on April 22, 2015, he discovered that the State had suppressed the criminal history of the victim, Tony Greer. (Doc. 1-3, pp. 1-7). Williams also alleges that he raised the violation of his right to effective assistance of counsel because his attorney did not investigate Greer's criminal history. (Doc. 1-3, pp. 4-5). Williams alleges that the application was denied.

Williams filed a writ of supervisory review. The appellate court found that, "[b]ecause the district court's ruling referred to the docket number of Williams's conviction in docket number 205,771 and is not clearly based upon the facts of number 205,611, we vacate the trial court's ruling and remand for consideration of this application under the correct docket number." (Doc. 1-5, pp. 16-17).

On remand, the district court found that Williams's ineffective assistance of counsel claim was repetitive. The court did not address the claim about the allegedly suppressed evidence. (Doc. 1-5, pp. 23-24). Williams again sought review in the appellate court because the district court's ruling was non-responsive. The appellate court agreed, finding that "the ruling is a summary denial as repetitive, with no clear indication that the claim of newly discovered evidence regarding Mr. Greer's criminal history (the Brady complaint) was considered by the district court as instructed." (Doc. 1-5, p. 35; Docket No. 50,817, consolidated with 51,249, La. App. 2 Cir.).

In response, the district court determined that Williams's claim of "newly discovered evidence" was meritless, noting that Williams alleged "no valid newly discovered facts or unknown claim which would constitute and [sic] exception to the time limitation for filing an application of post-conviction relief." (Doc. 1-5, p. 37). The appellate court was satisfied with this ruling and denied writs on February 24, 2017. (Doc. 1-5, p. 47; Docket No. 51,407, La. App. 2 Cir.).

Williams sought writs in the Louisiana Supreme Court on March 15, 2017. The writ application was denied because Williams had "previously exhausted his right to state collateral review." State ex rel. Williams v. State, 2017-0686 (La. 8/3/18, 1), 249 So.3d 830.

II. Law and Analysis

    A.    Williams's Petition (Doc. 1) is controlled by Rule 4 of the Rules Governing § 2254 Cases.

Rule 4 of the Rules Governing § 2254 Cases provides that, following an examination of the pleadings by the Court, "'[i]f it plainly appears from the face of the

3

petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified.'" See Kiser v. Johnson, 163 F.3d 326, 328 (5th Cir. 1999) (quoting the Rules Governing § 2254 Cases).

B.     Williams is not entitled to statutory or equitable tolling.

In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress enacted 28 U.S.C. § 2244(d), which provides a one-year statute of limitations for filing applications for writs of habeas corpus by persons in custody pursuant to the judgment of a state court. The limitations period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Federal courts may raise the one-year limitations period sua sponte. See Kiser v. Johnson, 163 F.3d 326 (5th Cir. 1999).

The statutory tolling provision of § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief is pending in state court is not counted toward the limitations period. Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitations period. Villegas v. Johnson, 184 F.3d 467, 472 (5th Cir. 1999) (citing Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998)).

Because Williams did not seek direct review in the Louisiana Supreme Court, his conviction became final on March 30, 2001, 30 days after the appellate court

affirmed his conviction, when the time within which to seek writs in the Louisiana Supreme Court expired. La. Sup. Ct. R. 10. Williams's first application for post-conviction relief is dated January 23, 2003. (Doc. 14-4, pp. 2-8). Because the one-year period under the AEDPA expired prior to the filing of the application, Williams receives no benefit of the statutory tolling provision of § 2244(d)(2).

Williams alleges he is entitled to equitable tolling because, on April 22, 2015, he discovered that the victim's criminal history had been withheld by the State. The AEDPA's one-year statutory deadline can, in exceptional circumstances, be equitably tolled. See Holland v. Florida, 560 U.S. 631 (2010); Davis v. Johnson, 158 F.3d 806, 810-11 (5th Cir. 1998). To be entitled to equitable tolling, a petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way and prevented timely filing. See Mathis v. Thaler, 616 F.3d 461, 474 (5th Cir. 2010). A petitioner bears the burden of proof to invoke equitable tolling. See Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Highlighting the doctrine's limited scope, the Fifth Circuit has stated that "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Clarke v. Rader, 721 F.3d 339, 344 (5th Cir. 2013) (citing Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation marks omitted)). Because it is a discretionary doctrine, however, a court's determination of whether equitable tolling applies "turns on the facts and circumstances of a particular case." Id. (citing Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)). For the same

reason, "equitable tolling does not lend itself to bright-line rules." Id. Nonetheless, certain sources of delay in filing do not create "extraordinary circumstances" warranting equitable tolling. Id. For example, "delays of the petitioner's own making do not qualify" for equitable tolling. In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006).

Williams allegedly obtained the information regarding Greer's criminal history through a simple public record request he submitted in March 2015. (Doc. 14-8, pp. 26-31). Williams originally requested the information from the Shreveport Police Department in 2011 through the Freedom of Information Act ("FOIA"). (Doc. 14-8, p. 34). The police department determined that personal criminal history was not subject to the terms of the FOIA. (Doc. 14-8, p. 34). After the FOIA request was denied 2011, Williams did not pursue the information until 2015, when he submitted a public records request. Williams provides no explanation for his inaction between 2011 and 2015. As Respondent notes, Williams made other unrelated public records requests during that time frame. (Doc. 14-5, pp. 171-72).

Williams does not allege that Greer's criminal history could not have been acquired prior to 2015 through due diligence, or that he was actively prevented from acquiring the material until 2015. See Mathis, 616 F.3d at 474. Because Williams cannot meet the requirements of equitable tolling, his § 2254 Petition is untimely.

## C. Williams cannot obtain habeas relief based on actual innocence.

Williams alleges that he discovered a new alibi witness establishing his innocence. A claim of actual innocence is not a freestanding claim for federal habeas corpus relief. Floyd v. Vannoy, 894 F.3d 143, 155 (5th Cir. 2018), cert. denied, 139

6

S.Ct. 573 (2018); In re Swearingen, 556 F.3d 344, 348 (5th Cir. 2009). Rather, a credible actual innocence claim provides a gateway for overcoming a procedural default or an untimely federal habeas claim. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). A credible claim of actual innocence is one supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Actual innocence claims are "rarely successful." Id.

Williams claims he found an alibi witness, Nadira Khan ("Khan"), when she contacted him after he placed an ad on a website. (Doc. 14-9, p. 6). Khan signed an affidavit indicating that she was with "Ronald Williams" in New York at the time of the robbery. (Doc. 14-9, p. 18). Williams does not explain his relationship with Khan, and nothing in the voluminous record indicates that Williams ever claimed to have been in New York at the time of the robbery.

Moreover, Williams was convicted of another robbery that occurred the day before the one at issue in this Petition. Three eyewitnesses identified Williams in that case, Williams, 781 So.2d at 687, and two eyewitnesses identified him in this case, Williams, 781 So.2d at 678. Khan's uncorroborated affidavit is not the type of reliable evidence that supports an actual innocence claim.

Moreover, evidence does not qualify as "new" under the actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." Moore v. Quarterman, 534 F.3d 454, 465 (5th Cir. 2008).

7

Because Williams alleges that he was with this witness when the crime was committed, it is certainly not "new" evidence of which he was previously unaware.

### D. Williams cannot succeed on the merits.

#### 1. Williams does not establish a viable Brady claim.

Even if Williams's Petition was timely filed, his claims would be unsuccessful. Williams alleges that the State violated Brady v. Maryland, 373 U.S. 83 (1963) and his Fourteenth Amendment rights by failing to disclose Greer's criminal history. Williams asserts that he could have used such evidence to impeach Greer's credibility and create reasonable doubt in the minds of the jury.

Under Brady, the prosecution has a duty to disclose evidence favorable to the defendant when such evidence is material to either guilt or punishment. Brady, 373 U.S. at 87. This duty is based on the Fourteenth Amendment's Due Process Clause and is intended to assure that an accused receives a fair trial. Id. Impeachment evidence is subject to disclosure under Brady. United States v. Bagley, 473 U.S. 667, 676 (1985).

"Potential Brady evidence is prejudicial if it is material." Strickler v. Greene, 527 U.S. 263, 282 (1999). In turn, evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." United States v. Hughes, 230 F.3d 815, 819 (5th Cir. 2000) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)). "Impeachment evidence is usually not material if testimony of the witness who could have been impeached was strongly corroborated

by other evidence." Barnes v. Vannoy, 697 F. App'x 799, 803 (5th Cir. 2017) (citing United States v. Sipe, 388 F.3d 471, 478 (5th Cir. 2004)).

The purported impeachment evidence—Greer's criminal history—consists of Greer's traffic violations from 1993-2009. (Doc. 14-8, p. 28). Even if this should have been disclosed, it was not material and would have made no difference in the result of the proceeding. Greer gave detailed testimony about the robbery and had no doubt that Williams was the perpetrator. (Doc. 14-3, pp. 89-90). He testified that he had the opportunity to observe Williams for "a pretty good amount of time," which he estimated to be about 15 minutes, while Williams kept a gun pointed at him. (Doc. 14-3, pp. 77, 85). Eight days after the robbery, Greer identified Williams in a photographic lineup without any hesitation. (Doc. 14-3, pp. 89, 93). Greer testified with certainty at trial that Williams was the person who robbed him. (Doc. 14-3, pp. 90-91).

Greer's identification was corroborated by another witness, Joanna Anderson. Although Anderson explained at trial that Williams's hairstyle was different in the photograph and at trial than it was at the time of the robbery, she still picked out Williams in a photographic lineup. (Doc. 14-3, pp. 95, 113, 117-118).

There was also evidence that the police received a phone call from someone identifying "Murk" as being involved in the robbery. Williams, 781 So.2d at 679. Records showed "Murk" to be Williams. (Doc. 14-3, p. 102).

Moreover, it is unlikely that Greer's credibility would have been called into question by possible prior convictions for traffic offenses so as to make any difference

9

in the outcome of the trial. Williams fails to show a <u>Brady</u> violation that would entitle him to relief.

### 2. Williams cannot establish ineffective assistance of counsel.

Williams presents two claims alleging that trial counsel rendered ineffective assistance under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Williams claims counsel failed to investigate Greer's criminal history and failed to investigate, interview, or call Khan at trial. (Doc. 1-2, p. 17).

To state a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's performance was deficient; and (2) counsel's deficient performance prejudiced his defense. <u>Id.</u> at 687. Counsel's performance is deficient if it "fell below an objective standard of reasonableness." <u>Id.</u> at 688. Judicial scrutiny of counsel's performance must be "highly deferential." <u>Id.</u> at 689. A reviewing court should make every effort "to eliminate the distorting effects of hindsight" and to "evaluate the conduct from counsel's perspective at the time." <u>Id.</u>

Thus, Williams must demonstrate prejudice in addition to deficient performance. Deficient performance results in prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

As discussed above, it is extremely unlikely that Greer's credibility would have been called into question by his possible prior convictions for traffic offenses so as to make any difference in the outcome of the trial. Williams cannot establish that his

attorney's failure to investigate the victim's purported criminal history led to a different outcome of the trial.

Additionally, Williams cannot establish ineffective assistance for his attorney's failure to call Khan as a witness. Although Williams now claims that he told trial counsel that he was not in Louisiana when the robbery occurred and that he was with Kahn in New York, his allegation is conclusory. Conclusory allegations cannot support a constitutional claim for habeas review. Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000), cert. denied, 531 U.S. 957 (2000).

Williams was convicted of two armed robberies that occurred one day apart, and he was identified by numerous eyewitnesses in both cases. State v. Williams, 34,369 (La. App. 2 Cir. 2/28/01), 781 So.2d 673; State v. Williams, 34,370 (La. App. 2 Cir. 2/28/01), 781 So.2d 682. The affidavit of a supposed alibi witness produced 16 years after Williams's conviction renders its credibility highly suspect. See King v. Davis, 883 F.3d 577, 594 (5th Cir. 2018) (per curiam), cert. denied, 139 S.Ct. 413 (2018) (finding an affidavit's credibility mitigated because it was submitted eight years after conviction); Komolafe v. Quarterman, 246 F. App'x 270, 272 (5th Cir. 2007), cert. denied, 552 U.S. 1332 (2008) (finding an affidavit's credibility mitigated when submitted eight years after conviction).

Williams cannot show deficient performance by trial counsel or prejudice resulting from the alleged failure to investigate a purported alibi witness identified for the first time 16 years after conviction.

### III. Conclusion

Because the § 2254 Petition is untimely and substantively meritless, IT IS RECOMMENDED that Williams's § 2254 Petition (Doc. 1) be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed.R.Civ.P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 28th day of October 2019.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE